**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**HERACLIDES ROSARIO, 93-A-5280,**

                    **Plaintiff,**

**v.**
                                                         **16-CV-0228(JLS)(HKS)**

**DOUGLAS NOLAN,**

                    **Defendant.**

**REPORT AND RECOMMENDATION**

This case was referred to the undersigned by the Hon. John Sinatra, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #91.

Plaintiff Heraclides Rosario ("plaintiff"), filed this *pro se* action pursuant to 42 U.S.C. § 1983 against New York State Department of Corrections and Community Supervision ("DOCCS") employee Douglas Nolan ("defendant"). Plaintiff's complaint stems from an incident that occurred on April 22, 2015, while plaintiff was an inmate at Attica Correctional Facility ("Attica"). Dkt. ##1, 65.

Currently pending before the Court are the parties' cross-motions for summary judgment. Dkt. ##71, 76. For the reasons that follow, it is respectfully recommended that plaintiff's motion for summary judgment (Dkt. #71) be denied, and defendant's motion for the same relief (Dkt. #76) be granted.

**FACTUAL BACKGROUND**

The following facts, drawn from the parties' Local Rule 56(a)(1) statements of facts and supporting exhibits, are undisputed unless otherwise noted. Dkt. ##76, 85-87.

At all times relevant to the instant matter, the plaintiff was an inmate housed at Attica, and defendant was an employee of DOCCS assigned to Attica. Plaintiff alleges that his Eighth Amendment rights were violated when defendant failed to protect him from being assaulted by another inmate.

On April 22, 2015, defendant was the sole block officer assigned to A-Block, 3-Company, responsible for maintaining the safety and security of that area and the inmates housed therein. Defendant was in possession of the keys for the company. At approximately 8:20 a.m., defendant was in the process of releasing inmates from their cells for morning programming and breakfast. At that time, defendant looked down the gallery and noticed that plaintiff and inmate Christopher Samuels ("Samuels") were involved in an altercation. Plaintiff was seated on a bench and Samuels was striking him.

There were approximately twenty inmates present on the gallery at that time. Under such circumstances, DOCCS policy and procedure requires that the area be secured until a sufficient number of officers are present to allow for physical intervention, to ensure the safety and security of inmates and staff. Specifically, failing to wait for adequate backup could lead to injury to staff and/or inmates and escalate a

potentially volatile situation. It also provides an opportunity for an inmate to obtain possession of facility keys, should a single responding officer be overpowered.

In accordance with this policy, defendant immediately closed the gallery gate to secure the area and issued a direct order for Samuels to stop striking plaintiff and come to the front of the gallery. Defendant also called for backup. At some point Samuels stopped striking plaintiff, either upon defendant's order to "stop fighting" or when the response team arrived. Plaintiff testified the incident lasted about five minutes. Dkt. #76-2, ¶12; Dkt. #76-4 at 91. Ultimately, both plaintiff and Samuels were escorted out of the area without further incident, and both inmates were taken to the infirmary for a medical evaluation.

Prior to the incident, plaintiff had no problems with Samuels and had no reason to feel threatened by him. Plaintiff and Samuels shared a therapy program, occasionally played cards together, and said "hello and goodbye," but the two were not considered friends. Dkt. #76-4 at 67. Plaintiff made no complaints with staff regarding Samuels prior to the incident and did not inform staff that Samuels was a threat to him. Instead, on the day of the attack, plaintiff was sitting on a bench putting his hearing aids in when Samuels "popped up out of nowhere" and started beating him. *Id.* at 82, 85. Plaintiff testified that he was blindsided by the attack. *Id.* at 88. During the incident, defendant repeatedly ordered Samuels to stop fighting.

Plaintiff testified that when Samuels began beating plaintiff, defendant closed the gate, called and waited for backup, and when backup arrived, the gate was

opened, and the inmates were removed. Dkt. #76-4 at 105-06. Plaintiff was injured as a result of the incident, and received eight to ten stitches in his forehead. *Id.* at 95.

## DISCUSSION AND ANALYSIS

**Summary Judgment**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A factual dispute is material "only if it has some effect on the outcome of the suit." *Eagley v. State Farm Ins. Co.*, No. 13-CV-6653, 2015 WL 5714402, at *5 (W.D.N.Y. Sept. 29, 2015) (citation and quotation omitted). Moreover, a genuine issue exists as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Section 1983**

Plaintiff brings his complaint under 42 U.S.C. § 1983, which provides a civil claim for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (internal citations omitted). To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must establish that a person acting under color of state law deprived him of a federal right. *Id.*

**Failure to Protect**

Plaintiff claims that defendant violated his Eighth Amendment rights by failing to intervene in Samuels' assault against plaintiff. Dkt. ##85, 86.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). More specifically, "an inmate's claim that prison officials failed, as a result of their deliberate indifference, to protect him from the violent actions of other inmates may state a viable § 1983 cause of action." *Hendricks v. Coughlin*, 942 F.2d 109, 113 (2d Cir. 1991); *see also Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985) ("The failure of custodial officers to employ reasonable measures to protect an inmate from violence by other prison residents has been considered cruel and unusual punishment.").

5

Not every prison scuffle is a matter of constitutional import, however, and minor injuries from random altercations are insufficient. *See Colliton v. Gonzalez*, No. 07 Civ. 2125, 2011 WL 1118621 at *6 (S.D.N.Y. March 23, 2011). Thus, the injury sustained, i.e., "the deprivation alleged, must be, objectively, sufficiently serious." *Farmer*, 511 U.S. at 834. In the instant case, plaintiff's laceration on the face, requiring stitches, is sufficiently serious to satisfy the objective prong of an Eighth Amendment claim. *See, e.g., Green v. Leubner*, No. 07–CV–1035, 2009 WL 3064749, at *6 (N.D.N.Y. Sept. 22, 2009) (facial lacerations treated with 18 "steri strips" sufficiently serious to withstand summary judgment motion).

To establish deliberate indifference, plaintiff must also demonstrate that the prison official was subjectively aware that the inmate faced a substantial risk of serious harm but disregarded that risk by failing to take reasonable measures to prevent the harm and ensure a safe environment. *Hayes v. N.Y. City Dep't of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996). "The subjective element requires a state of mind that is the equivalent of criminal recklessness; namely, when the prison official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation omitted); *see also Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) ("Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm."), *cert. denied*, 513 U.S. 1154 (1995). Absent clear notice of a risk of harm by way of prior altercations between plaintiff and his attacker or prior threats made against plaintiff by his attacker or some

6

other reason for prison officials to be on notice of the risk of an altercation between plaintiff and his attacker, courts routinely deny deliberate indifference claims based upon surprise attacks. *Parris v. New York Dep't Corr. Servs.*, 947 F.Supp.2d 354, 363 (S.D.N.Y. 2013) (citing *Fernandez v. New York Dep't Corr. Servs.*, No. 08 CV 4294, 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010)).

Plaintiff alleges, and the evidence demonstrates, that the incident with inmate Samuels was an isolated one. It is undisputed that the plaintiff had no advance knowledge that he was going to be attacked by Samuels and had no specific fear of being assaulted such that the defendant did not receive any advance warning from the plaintiff or anyone else. Plaintiff testified that, prior to the incident, he had no problems with Samuels and did not feel the need to complain to anyone about him. Dkt. #76-4 at 66-68. Plaintiff also testified that he was surprised by the attack and that Samuels "popped up out of nowhere." *Id.* at 82. Thus, neither plaintiff nor the defendant was aware that the plaintiff was in any specific risk of serious harm and no reasonable officer could have drawn an inference that plaintiff may have been in danger. Accordingly, plaintiff fails to meet the subjective element because the evidence in the record supports only the conclusion that defendant was unaware that Samuels intended to harm plaintiff. *See Bussey v. Miller*, No. 16-CV-0082, 2020 WL 4719957, at *10 (W.D.N.Y. July 1, 2020), *report and recommendation adopted,* No. 16-CV-82, 2020 WL 4705208 (W.D.N.Y. Aug. 12, 2020) ("Nevertheless, that Plaintiff sustained the serious injury does not establish that Defendants knew, prior to the assault, that Plaintiff faced a substantial risk of serious harm posed by Valderas and then failed to act upon such knowledge as required for the subjective prong."); *see also Harris v. Poole,* No.

7

03CV861, 2006 WL 3313827, *3 (W.D.N.Y. Nov. 15, 2006) (Plaintiff did not allege previous history of confrontation with his attacker and therefore did not demonstrate a factual question as to whether defendants knew of and disregarded an excessive risk to the plaintiff's health or safety).

Moreover, it is well established that a failure to intervene in an inmate-on-inmate assault is not actionable if, in so doing, an officer would have subjected himself or others to harm. See Stubbs v. Dudley, 849 F.2d 83, 86-87 (2d Cir. 1988) ("An officer displays deliberate indifference when he has adequate time to assess a serious threat against an inmate and a fair opportunity to protect the inmate with no risk to himself, yet fails to act."); Blaylock v. Borden, 547 F. Supp. 2d 305, 312 (S.D.N.Y. 2008) (awaiting assistance was reasonable when the officer was alone with two inmates).

Here, defendant was the sole company officer assigned to the area, where at least twenty inmates were present.[1] See Dkt. #76-2, ¶¶ 4,8. He was also in possession of the control keys for the company. In light of this and in line with policy and practice, defendant immediately called for backup when he witnessed the altercation, and ordered the inmates to desist. Upon defendant's actions, Samuels stopped his attack on the plaintiff, officers responded and removed Samuels, and plaintiff was promptly taken to receive medical attention. Id. at ¶¶4, 10-11, 13.[2] Plaintiff declined protective custody following the attack. Dkt. #76-4 at 17-18.

---

[1] Plaintiff testified that there were over 30 inmates from his company in the area at the time of the assault. Dkt. #76-4 at 78-79.

While plaintiff may disagree, defendant's actions cannot be characterized as deliberately indifferent, but rather as an appropriate response to an emergent situation consistent with DOCCS policy and procedure. Accordingly, no reasonable juror on these facts could find that the defendant possessed the culpable state of mind required to sustain plaintiff's § 1983 claim asserting failure to protect. *See Lawrence v. Rodak*, No. 11-CV-6115, 2014 WL 4829418, at *3 (W.D.N.Y. Sept. 29, 2014) (finding defendant's delay in intervening in inmate altercation until other officers arrived was not a failure to act where it was "undisputed that [defendant] was alone in the staff office at the time of the fight," that "the events complained of transpired within minutes," and the "inmates could have attacked [defendant] if he began to physically intervene by himself.").

For these reasons, plaintiff's deliberate indifference claim fails as a matter of law, and summary judgment in favor of defendant is recommended.

**Qualified Immunity**

Defendant asserts the defense of qualified immunity (*see* Dkt. #76-1 at 9-11), which protects a government official from liability for damages unless his actions violate a "clearly established statutory or constitutional right of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). More specifically, the officers are entitled to qualified immunity if "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007) (internal citations omitted).

As discussed above, plaintiff did not notify defendant that he was at risk at any point in time, therefore it was objectively reasonable for him to believe that the plaintiff did not face a serious risk of harm. Additionally, defendant followed DOCCS policy and procedure to ensure the safety of staff and inmates. Thus, in the alternative, summary judgment should be granted in defendant's favor on the basis of qualified immunity. *See James v. Orange Cnty. Corr. Facility*, No. 09 CIV. 7226 , 2011 WL 5834855, at *8 (S.D.N.Y. Nov. 18, 2011) (alternatively recommending dismissal on qualified immunity grounds, where "it cannot be said no reasonable officer in [defendant's] position would have done as he did and follow prison procedures to the letter.").

Inasmuch as the Court is recommending granting defendant's motion for summary judgment for the reasons set forth above, the Court need not reach defendant's remaining argument asserting Eleventh Amendment immunity. Dkt. #76-1 at 10. *See, e.g.*, *Brooks v. Hogan*, No. 915CV00090, 2020 WL 5034226, at *32 (N.D.N.Y. Apr. 27, 2020), *report and recommendation adopted*, No. 915CV00090, 2020 WL 2832045 (N.D.N.Y. June 1, 2020) ("because of the above recommendation recommending dismissal of the consolidated complaint in its entirety, the Court need not address Defendants' remaining arguments.").

## CONCLUSION

For all of the above reasons, it is recommended that defendant's motion for summary judgment (Dkt. #76) be **GRANTED in its entirety**, plaintiff's motion for

10

summary judgment be **DENIED in its entirety** (Dkt. #71), and plaintiff's amended complaint (Dkt. #65) be **DISMISSED with prejudice**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

With respect to defendant's motion for summary judgment, **ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. Proc. 72(b) and Local Rule 72(b).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the

portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Report and Recommendation to plaintiff and defendant.

**ALL OF THIS IS SO ORDERED.**

DATED:   Buffalo, New York
         March 22, 2021

                                        <u>*S/ H. Kenneth Schroeder, Jr.*</u>
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**